**IRA GALLOWAY, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2011-0114

Supreme Court of the Virgin Islands

December 5, 2012

695

KELE C. ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant*.

PAUL J. PAQUIN, ESQ., Deputy Solicitor General, St. Thomas, USVI, *Attorney for Appellee*.[1]

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(December 5, 2012)

HODGE, *Chief Justice*

Appellant Ira Galloway seeks appellate review of the Superior Court's December 6, 2011 Judgment and Sentence, which adjudicated him guilty of driving under the influence of an intoxicating liquor, operating a motor vehicle in a reckless manner, and failure to stop at a red light. For the reasons that follow, we affirm Galloway's convictions, but remand the matter for re-sentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 6, 2011, Galloway was tried before a jury in the Superior Court on charges stemming from an incident that occurred on July 2, 2010. At trial, the arresting officers — Ellery Quailey and Samaria Lake — were the only witnesses to testify, and both stated that, when they reached an intersection with a traffic light while driving west to east on the Melvin Evan Highway on St. Croix, they saw a vehicle coming from east to west, approach the right turning lane, and make a right turn without stopping.[2] (J.A. 41-42, 83.) Although neither officer had seen the color of the traffic light from the perspective of the other driver, they believed the driver had driven past a red light because the traffic light on

---

[1] Although counsel for the People of the Virgin Islands appeared in this matter, the People failed to timely file a brief before the July 5, 2012 deadline, and failed to establish any grounds for an extension of time pursuant to Supreme Court Rule 17 when it filed motions for extension of time and for leave to file out of time on July 20, 2012, August 1, 2012, and October 5, 2012 — the business day before oral argument. Accordingly, this Court did not accept the People's untimely brief, and did not permit counsel for the People to participate at the oral argument hearing. *See* V.I.S.CT.R. 25(c) ("If an appellee fails to file a brief within the time provided by this Rule, or within the time as extended, the appellee will not be heard at oral argument except by permission of the Supreme Court.").

[2] In the Virgin Islands, motorists drive on the left side of the road. *See Semper v. Santos*, 845 F.2d 1233, 1234 (3d Cir. 1988).

their side of the road was green at the time. (J.A. 42, 83.) The officers initiated a traffic stop and directed the driver — later identified as Galloway — to exit the vehicle. (J.A. 45-46, 105-06.) According to the officers, Galloway staggered out of the vehicle, had bloodshot eyes, spoke with slurred speech, and had a strong smell of alcohol coming from his breath. (J.A. 46-47, 107.) The officers further testified that Galloway failed a field sobriety test administered by Officer Quailey, at which point he was arrested and transported to a police station, where he refused to take a breathalyzer test. (J.A. 52-53, 107-08, 116-17.)

The jury announced its verdict on September 7, 2011, in which it convicted Galloway of all three counts. On November 30, 2011, the Superior Court orally sentenced Galloway to one year of incarceration for driving under the influence, but suspended the sentence and placed him on one year of supervised probation. In addition, the Superior Court imposed a $300.00 fine, $200.00 supervision fee, and $75.00 in court costs. It is unclear, however, whether the Superior Court imposed the same incarcerative sentence for each of the remaining two counts. The Superior Court also directed Galloway to pay a $100.00 fine on the count charging operation of a motor vehicle in a reckless manner, as well as a $25.00 fine for the failure to stop at a red light count. Additionally, the Superior Court ordered Galloway to complete a substance abuse program and remain drug and alcohol free. But when the Superior Court memorialized its decision in its December 6, 2011 Judgment and Sentence, it increased the fine for failure to stop a red light to $35.00, without explaining the variance. Galloway timely filed his notice of appeal on December 12, 2011.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court. . . ." V.I. CODE ANN. tit. 4, § 32(a). An order is considered to be "final" for purposes of this statute if it "ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment." *Williams v. People*, 55 V.I. 721, 727 (V.I. 2011). Because the Superior Court's December 6, 2011 Judgment and Sentence is a final judgment, we have jurisdiction over Galloway's appeal.

Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). When reviewing a challenge to the sufficiency of the evidence supporting a conviction, we view all issues of credibility in the light most favorable to the People. *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009). If " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,' " we will affirm. *DeSilvia v. People*, 55 V.I. 859, 865 (V.I. 2011) (quoting *Mendoza v. People*, 55 V.I. 660, 666-67 (V.I. 2011)). The evidence offered in support of a conviction " 'need not be inconsistent with every conclusion save that of guil[t], so long as it establishes a case from which a jury could find the defendant guilty beyond a reasonable doubt.' " *Mulley v. People*, 51 V.I. 404, 409 (V.I. 2009) (quoting *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1996)). A defendant seeking to overturn his conviction on this basis bears " 'a very heavy burden.' " *Latalladi*, 51 V.I. at 145 (quoting *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982)).

Moreover, when a criminal defendant fails to object to a Superior Court decision or order, this Court ordinarily only reviews for plain error, provided that the challenge has been forfeited rather than waived. *See* V.I.S.CT.R. 4(h); *see also Francis v. People*, 52 V.I. 381, 390 (V.I. 2009). For this Court to reverse the Superior Court under the plain error standard of review, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). However, even "[i]f all three conditions are met," this Court may reverse the Superior Court "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 390-91 (citations and internal quotation marks omitted).

## B. Failure to Stop at a Red Light Conviction[3]

Galloway contends, on numerous grounds, that this Court should set aside his conviction for failure to stop at a red light. We reject each argument in turn.

---

[3] While Galloway raised these arguments in a different order in his appellate brief, we address each issue in an alternate order based on the specific conviction challenged, as well as

## 1. Sufficiency of the Evidence

 In his appellate brief, Galloway argues — for the first time on appeal, and without citing to any legal authority — that the People failed to prove, beyond a reasonable doubt, that he failed to stop at a red light, due to the absence of any eyewitness testimony that the light at the intersection was red instead of green or yellow. However, this Court has consistently held that circumstantial evidence may support a guilty verdict, *see Alfred v. People*, 56 V.I. 286, 293-94 (V.I. 2012), so long as that circumstantial evidence is sufficient for a jury to infer the elements of the charged offense. *See Codrington v. People*, 57 V.I. 176, 199 (V.I. 2012). Although Galloway is correct that the People failed to introduce any direct evidence that the traffic light in front of his vehicle was red, both Officers Quailey and Lake unequivocally testified that they were faced with a green light when they approached the same intersection from west to east. Given this testimony, the jury could, in the absence of any direct evidence to the contrary, have drawn on their general knowledge of how traffic lights function to infer that the traffic light facing Galloway was red at the time he entered the right lane and made a turn without stopping. *See, e.g., Melia v. Ford Motor Co.*, 534 F.2d 795, 801 (8th Cir. 1976) ("One could infer that the decedent entered the intersection on the red light (even though plaintiff might argue that she did not) from the testimony of the other driver that he entered on a green light."); *Hall v. Commonwealth*, 32 Va. App. 616, 529 S.E.2d 829, 837 (2000) ("Commonwealth witnesses testified that Holmes had the green light. The evidence was sufficient for the jury to infer that [the defendant] made the left turn on a red light or at least not on the green arrow."); *Sw. Bell Tel. Co. v. Davis*, 582 S.W.2d 191, 194 (Tex. Civ. App. 1979) ("There is evidence that at the time the light facing Mindieta turned green, an automobile was just clearing the intersection. Thus, the jury could reasonably infer that Mrs. Davis was partially in the intersection when the light facing her turned red."); *Williams v. Funke*, 428 S.W.2d 11, 15 (Mo. Ct. App. 1968) ("From this evidence the jury might reasonably infer that, when plaintiff emerged from the ramp with her controlling light green in her favor, the other light on the east side of Union between the two ramps

which alleged errors, if sustained, would provide him with the greatest form of relief from this Court.

and controlling northbound traffic on Union read red and so find that defendant violated the latter traffic signal."); *Troxler v. Cent. Motor Lines*, 240 N.C. 420, 82 S.E.2d 342, 346 (1954) ("The allegations of the complaint justify the inference that when an electric traffic control light, installed and maintained by a city at an intersection, shows red on one street, it shows green on the other. Thus from these allegations that when Wyrick and Lefler approached the intersection, Wyrick was faced with a red light on East Lee Street, it is logical and reasonable to infer that as Lefler approached the intersection she was faced with the green light on South Elm Street."). Therefore, we hold that the People introduced sufficient evidence to establish that Galloway had failed to stop at a red light.

### 2. Validity of 20 V.I.R.R. § 491-52(a)

Galloway also contends — again, for the first time on appeal — that failure to stop at a red light is not a valid crime in the Virgin Islands. As Galloway acknowledges, the Legislature has decreed that "[i]n addition to the provisions of [title 20, chapter 43 of the Virgin Islands Code], operators of motor vehicles shall observe the general traffic regulations contained in the Police Regulations set out in Title 23, and such traffic and parking regulations as may from time to time be published by the Police Commissioner." 20 V.I.C. § 491. According to Galloway, the requirement that a motorist stop at a red light is not codified in title 20, chapter 43[4] or in title 23, but is found only in 20 V.I.R.R. § 491-52(a) — a regulation promulgated by the Police Commissioner — and should therefore not be considered a crime. Specifically, Galloway argues (1) that the use of the word "and" instead of "or" in section 491 means that motorists do not have to follow the police regulations, and (2) that the Legislature has not decreed that failure to stop at a red light is a criminal offense.

---

[4] Galloway is incorrect that title 20, chapter 43 is completely silent on the matter, for section 512 of title 20 — which establishes a schedule of fines for various traffic violations — identifies "passing a red light" as a violation that requires imposition of a $75.00, $100.00, or $150.00 fine for, respectively, a first, second, or third offense. However, even if "passing a red light" is equivalent to failing to stop at a red light — which may not necessarily be the case, since section 512 cites 20 V.I.C. § 495(a), a provision governing how vehicles should pass each other, as the relevant code provision — the Legislature did not enact section 512 until July 12, 2011, and the events that led to Galloway's convictions occurred on July 2, 2010.

■ Galloway's first argument lacks merit, since section 491 of title 20 clearly provides that motor vehicle operators must follow the provisions of chapter 43 of title 20, the general traffic regulations contained in the Police Regulations of title 23, "*and* such traffic and parking regulations as may from time to time be published by the Police Commissioner." (emphasis added). While Galloway contends that the Legislature should have used the word "or" in place of "and" if it wished for motorists to follow the Police Commissioner's regulations, both common sense and the traditional rules of English grammar dictate that in this context the word "and" is being used as a conjunctive, meaning that a motorist must comply with all three of the listed authorities. *See, e.g., State v. Marx*, 289 Kan. 657, 215 P.3d 601, 609 (2009) (citing 82 C.J.S. *Statutes* § 331).

■ Nevertheless, Galloway's contention that the Legislature has not chosen to criminalize violations of 20 V.I.R.R. § 491-52(a) represents a more serious issue. While the pertinent count in the second amended complaint filed by the People cites to 20 V.I.C. § 491 and 20 V.I.R.R. § 491-52(a), section 491 simply states that a motorist must follow the traffic and parking regulations published by the Police Commissioner, without specifying that a violation of the regulations would constitute a crime. As this Court has previously explained, an individual who violates a regulation does not commit a criminal offense unless the agency possessed the statutory authority to promulgate the regulation and the Legislature has explicitly decided to criminalize violations of those regulations. *See Francis v. People*, 54 V.I. 313, 319 (V.I. 2010). Therefore, some other authority, beyond section 491 of title 20, is necessary to support the proposition that Galloway committed a crime when he failed to stop at the red light.

■ Such authority, however, is clearly found in chapter 45 of title 20, which provides that "[u]nless another penalty is specifically provided, whoever violates any provision of this part, or any law *or regulation* relating to the operation and use of motor vehicles, shall be fined not more than $200 or imprisoned not more than six months, or both." 20 V.I.C. § 544(f) (emphasis added). Unquestionably, section 491 of title 20 vested the Police Commissioner with the authority to promulgate 20 V.I.R.R. § 491-52(a), while section 544 of title 20 — by providing for six months imprisonment as a penalty for the violation of any traffic regulation for which a different penalty is not codified — rendered the conduct criminal. *See* 14 V.I.C. § 1(1) ("A 'crime' or 'offense' is an act committed or

omitted in violation of a law of the Virgin Islands and punishable by . . . imprisonment; or . . . fine").

██ Galloway, however, heavily relies on Virgin Islands Attorney General Opinion No. 1957-25, which concluded that "[p]etty and inconsequential traffic violations do not constitute crimes, while more serious infractions do," and defined "the offenses which may be handled by the [v]iolations [c]lerk under [Superior Court] Rule 160(a) and (b)" as those that "should not be considered crimes." 3 V.I. Op. A.G. 277, 278 (1957). As a threshold matter, the opinion of the Virgin Islands Attorney General — an officer of the Executive Branch — as to how Virgin Islands law should be interpreted is in absolutely no way binding on this Court or the Superior Court, since statutory interpretation is unquestionably a judicial power of which this Court is the final arbiter. *See* 4 V.I.C. § 21 ("The Supreme Court of the Virgin Islands is established . . . as the highest court of the Virgin Islands and in it shall be reposed the supreme judicial power of the Territory."); *Aero Mayflower Transit Co., Inc. v. I.C.C.*, 686 F.2d 1, 5-6, 222 U.S. App. D.C. 279 (D.C. Cir. 1982) ("[S]tatutory construction ultimately is a judicial function." (citation omitted)); *Unwired Telecom Corp. v. Parish of Calcasieu, La.*, 903 So.2d 392, 404 (La. 2005) ("The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of government." (citations omitted)). Nevertheless, even if it were appropriate to treat Opinion No. 1957-25 as persuasive authority, akin to a treatise or law review article, we cannot ignore that the opinion does not contain any citations to Virgin Islands statutes, including 14 V.I.C. § 1, 20 V.I.C. § 491, or 20 V.I.C. § 544 — all of which were in effect, in largely the same form, at the time the opinion was rendered. Significantly, the opinion's reliance on the classifications set forth in Superior Court Rule 160 ignores the fact that local courts may not use court rules as vehicles to create substantive law, and it is difficult to identify anything more substantive than what acts constitute criminal offenses. *See Gov't of the V.I. v. Durant*, 49 V.I. 366, 374-75 (V.I. 2008). Therefore, we hold, notwithstanding Attorney General Opinion No. 1957-25, that it is the provisions found in the Virgin Islands Code, and not Superior Court Rule 160, that determine what conduct constitutes a crime.

### 3. Superior Court Rule 160

Next, Galloway argues that the Superior Court should not have permitted the People to try him before a jury for the offense of failure to

stop at a red light, since — unlike the driving under the influence and reckless driving charges — Superior Court Rule 160[5] permits a defendant to plead guilty to this offense before a violations clerk in exchange for

---

[5] Rule 160, which is titled "Violations Clerk," provides, in its entirety, as follows:

(a) Appointment and functions. The court, whenever it determines that the efficient disposition of its business and the convenience of persons charged so requires, may constitute the clerk or deputy clerk of the court for a judicial division or any other appropriate official of the government, or, if such other appropriate officials are not available for appointment, any suitable and responsible person, as violations clerk for such judicial division. It shall be the function of a violations clerk to accept appearances, waiver of trial, plea of guilty and payment of fine and costs in traffic offenses, subject to the limitations hereinafter prescribed. The violations clerks shall serve under the direction and control of the presiding judge.

(b) Designated offenses; schedule of fines. The court shall by order, which may from time to time be amended, supplemented or repealed, designate the traffic offenses within the authority of the violations clerk, provided that such offenses shall in no event include offenses cognizable in the district court, accidents resulting in property damage or personal injury, operation of a motor vehicle while under the influence of intoxicating liquor or a narcotic or habit-producing drug or permitting another person who is under such influence to operate a motor vehicle owned by the defendant or in his custody or control, reckless driving, or leaving the scene of an accident.

The court, by published order to be prominently posted in the place where the fines are to be paid, shall specify by suitable schedules the amount of fines to be imposed for first, second and subsequent offenses, designating each offense specifically in the schedules, provided such fines are within the limits declared by statute or ordinance. Fines and costs shall be paid to, receipted by and accounted for by the violations clerk in accordance with these rules.

(c) Plea and payment of fine and costs

(1) Parking offenses. Any person charged with a parking offense may mail the amount of the fine and costs indicated on the ticket for such violations, together with a signed plea of guilty and waiver of trial, to the violations clerk.

(2) Other offenses. Any person charged with any traffic offense, other than a parking offense, within the authority of the violations clerk may appear in person before the violations clerk and, upon signing a plea of guilty and waiver of trial, pay the fine established for the offense charged, and costs. He shall, prior to such plea, waiver and payment, be informed of his right to stand trial, that his signature to a plea of guilty will have the same force and effect as a judgment of court, and that the record of conviction will be sent to the Commissioner of the Department of Public Safety of this territory or the Commissioner of Motor Vehicles of the state where he received his license to drive.

Where the person so charged promptly seeks to appear before the violations clerk in order to plead guilty, waive trial and pay the established fine and costs, and finds the violations clerk's office closed, he may, where he resides outside the judicial division, telephone the violations clerk, determine the amount of the fine and costs, and forthwith mail the same, together with a signed plea of guilty and waiver of trial, to the violations clerk.

paying a fixed fine.[6] Again, as with virtually every other issue raised in his appellate brief, Galloway has raised this argument for the first time on appeal, and therefore we review solely for plain error.

■■■■ Here, the record contains absolutely no evidence that Galloway ever made any attempt to invoke the Rule 160 procedure with respect to the charge of failure to stop at a red light, or that any request to plead guilty to that charge in exchange for paying the fixed fine would not have been granted. Thus, reversal under the plain error standard of review would not be warranted. *See, e.g., Nicholas v. People*, 56 V.I. 718, 752 (V.I. 2012) (plain error not shown where the appellant does not demonstrate that any error affected his substantial rights); *Brown v. People*, 56 V.I. 695, 706 (V.I. 2012). Moreover, even if Galloway had sought to plead guilty under Rule 160, the fact remains that a criminal defendant, absent detrimental reliance or other exception not applicable here, lacks the right to a plea agreement.[7] *See In re People of the V.I.*, 51 V.I. 374, 387-88 (V.I. 2009), *cert. denied*, No. 09-3492, slip op. at 1 (3d Cir. 2009). Accordingly, we reject Galloway's Rule 160 claim.

---

(d) Procedure after three convictions. No person who has been found guilty or who has signed a plea of guilty to three previous traffic offenses in the current calendar year shall be permitted to appear before the violations clerk unless the court shall, by general order applying to certain specified offenses, permit such appearance, conditioned upon the payment of a substantially increased fine, which increase shall be specified in such general order.

SUPER. CT. R. 160.

[6] We possess some concerns as to the validity of Rule 160, given that it appears to permit a court clerk — a non-judicial officer — to accept, on an *ex parte* basis and without the input of the government, a guilty plea for a criminal offense that carries a potential incarcerative penalty, but requires the clerk to impose only a fine as the sentence. *Cf. In re Richards*, 213 F.3d 773, 783, 42 V.I. 469 (3d Cir. 2000). However, since the remaining factors of the plain error test are not satisfied, it is not necessary for us, as part of this appeal, to address the validity of the Rule 160 procedure.

[7] In his appellate brief, Galloway also complains generally of the fact that the failure to invoke the Rule 160 procedure resulted in a jury adjudicating the failure to stop at a red light charge along with the driving under the influence and reckless driving charges. However, Galloway ignores the language of Superior Court Rule 154, providing that "[w]henever a traffic case is related to a criminal case . . . in that it arose out of the same facts and circumstances, the said traffic case may, by order of the judge . . . be consolidated for trial with such criminal offense . . . ."

## C. Reckless Driving Conviction

Galloway also challenges, on several grounds, his conviction for operating a motor vehicle in a reckless manner in violation of title 20, section 492. For the reasons that follow, we reject all of the arguments and affirm the reckless driving conviction.

### 1. *Sufficiency of the Evidence*

Galloway argues that the only evidence of reckless driving — which is defined as "the operation of a vehicle upon the public highways of this Territory in such a manner as to indicate either a willful or wanton disregard for the safety of person or property" — was his failure to stop at the red light, as well as his decision to drive under the influence of alcohol. According to Galloway, the fact that he committed one or both of those offenses is insufficient to establish that he drove his vehicle in a reckless manner, and — relying solely on cases from other jurisdictions — contends that the People were required to prove that his actions created an actual, apparent, and imminent danger to another person. (Appellant's Br. 18-19.)

██ ██ Again, Galloway's argument lacks merit. Although Galloway is correct that some courts have held that driving under the influence does not per se satisfy the elements of reckless driving on the grounds that behavior is not reckless unless it creates an imminent danger, Galloway fails to recognize that the statutes in those other jurisdictions to which he refers define recklessness differently than our local enactment. For instance, although the Supreme Court of Kansas held that "[o]ne's behavior is only reckless if he or she realizes that his or her conduct creates imminent danger to another person but consciously and unjustifiably disregards the danger," *State v. Huser*, 265 Kan. 228, 959 P.2d 908, 913 (1998), the statute that court interpreted expressly defined "reckless" as "conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger." KAN. STAT. ANN. 21-3201(c). Virgin Islands law, however, does not require actual or imminent danger as an element of reckless driving, but simply requires that one operate a vehicle "in such a manner as to indicate either a willful or wanton disregard for the safety of person or property." 20 V.I.C. § 492. Numerous courts, interpreting reckless driving statutes containing

language identical to our own enactment, have held that a jury can conclude that an individual who chooses to drive a vehicle despite being under the influence of alcohol has engaged in a "willful or wanton disregard for the safety of persons or property." *See, e.g., State v. Adkins*, No. M2009-00528-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 721, at *20 (Tenn. Crim. App. 2010) ("[A] reasonable trier of fact would conclude that an individual was driving with 'willful or wanton disregard for the safety of persons or property' when they drive with a blood alcohol level of 0.19 percent."); *McGrew v. State*, 469 So.2d 95, 97 (Miss. 1985) ("[T]here was also evidence that at the time of the collision McGrew's blood alcohol level was at least .26 percent . . . . Based on this evidence before the jury it could reasonably find that . . . his conduct at the time of the collision evinced a willful and wanton disregard for the safety of others and of human life."); *State v. Bolsinger*, 221 Minn. 154, 21 N.W.2d 480, 493 (1946) ("One who is willfully and wantonly negligent may not be intoxicated, but one who sufficiently under the influence of liquor to impair his capacity as a driver . . . is guilty of a willful and wanton disregard of the rights of all persons who ride with him or use the highway he travels.") (quoting *Foster v. Redding*, 97 Colo. 4, 45 P.2d 940, 942 (1935)). Likewise, numerous courts have held that running a red light also constitutes a "willful or wanton disregard for the safety of persons or property." *See, e.g., Porter v. Turner*, 954 A.2d 308, 312 (Del. 2008) (holding jury could find defendant's conduct "constituted willful and wanton disregard of the safety of others" when he ran a red light). Therefore, the jury could have concluded that Galloway engaged in a "willful or wanton disregard for the safety of person or property" based on either the fact that he drove while intoxicated, or the fact that he ran past a red light.

### 2. Jury Instructions

Galloway further alleges that the Superior Court's final jury instructions created a variance with the allegations in the charging instrument, and were otherwise erroneous. Count Two of the second amended complaint, which set forth the reckless driving charge, reads, in full, as follows:

> **IRA GALLOWAY**, did operate a motor vehicle over and along the public highways within the Territory of the Virgin Islands in a reckless

manner, to wit: by operating a 1989 4-door Isuzu Trooper, bearing the license plate number CEB-196, while under the influence of an intoxicating liquor and driving said Isuzu Trooper on the west bound lane, disregarding a red stop light in violation of Title 20 V.I.C. § 492 **(OPERATING A MOTOR VEHICLE IN A RECKLESS MANNER).**

(J.A. 13.) At the conclusion of the trial, the Superior Court instructed the jury as follows:

> Count II: The defendant, Ira Galloway, is charged in Count II of the Second Amended Complaint with the crime of Operating a Motor Vehicle in a Reckless Manner, in violation of Title 20 of the Virgin Islands Code, Section 492. Under the laws of the Virgin Islands, to "operate a motor vehicle in a reckless manner" means to operate a vehicle upon the public highway of this territory in such a way or manner as to indicate either a willful or wanton disregard for the safety of person or property. "Willful and wanton misconduct" is defined by Black's Law Dictionary as "conduct committed with an intentional or reckless disregard for the safety of others, as by failing to exercise ordinary care to prevent a known danger or to discover danger."
>
> Before you may find the defendant guilty of operating a motor vehicle in a reckless manner, you must find that the People have proven each and every one of the following elements beyond a reasonable doubt: One, the defendant, Ira Galloway, did drive or operate or was in physical control of a motor vehicle in a reckless manner. Two, that the defendant did drive or operate a motor vehicle on the public highway and, three, the defendant did drive or operate the vehicle in a manner that indicates a willful and wanton disregard for the safety of person or property and, four, the act occurred on or about July 2, 2010 in the Judicial District of St. Croix, United States Virgin Islands. Public road or highways are defined as all roads, highways and parking areas open for use by the public.

(J.A. at 199-200.) According to Galloway, the Superior Court erred in its jury instructions by omitting the allegations in the complaint that Galloway was "under the influence of an intoxicating liquor" and "disregard[ed] a red stop light." (J.A. 13.)

■ "To satisfy the Sixth Amendment, 'a[] [complaint must] state the elements of an offense charged with sufficient clarity to apprise a defendant of what he must be prepared to defend against.' " *Ambrose v. People*, 56 V.I. 99, 103 (V.I. 2012) (quoting *Givens v. Housewright*, 786 F.2d 1378, 1380 (9th Cir. 1986)). To warrant reversal, the variance between the complaint and the trial court's jury instructions must violate the defendant's right to be notified of the charge against him, to the point where he is unable to adequately defend himself at trial. *See Elizee v. People*, 54 V.I. 466, 479 (V.I. 2010) (citing *Gov't of the V.I. v. Joseph*, 765 F.2d 394, 398 (3d Cir. 1985)).

■ The Superior Court did not commit plain error[8] when it rendered its jury instructions. Although the second amended complaint stated that Galloway committed reckless driving by driving under the influence and failing to stop at a red light, it was not necessary for the People to include these specific allegations in the portion of the complaint charging Galloway with reckless driving. " 'Supreme Court precedent has consistently held that excess allegations in an [complaint] that do not change the basic nature of the offense charged . . . should be treated as mere surplusage.' " *Ramirez v. People*, 56 V.I. 409, 425 (V.I. 2012) (quoting *United States v. Pumphrey*, 831 F.2d 307, 309, 265 U.S. App. D.C. 306 (D.C. Cir. 1987) and citing *United States v. Miller*, 471 U.S. 130, 105 S. Ct. 1811, 85 L. Ed. 2d 99 (1985) and *Ford v. United States*, 273 U.S. 593, 600, 47 S. Ct. 531, 71 L. Ed. 793 (1927)). As this Court has recently explained, the Superior Court, when giving its final

---

[8] In his appellate brief, Galloway contends that this Court should review this issue *de novo* rather than only for plain error. Specifically, Galloway asserts that "Rule 4(h) of the Rules of [the] Supreme Court permits questions which were not raised at trial, 'when the interest[s] of justice so require,' " and that "[b]ecause only questions of law have been raised, the court's review is *de novo*." (Appellant's Br. 7.) However, Galloway omits the first clause of Rule 4(h), which provides that "[o]nly issues and arguments fairly presented to the Superior Court may be presented for review on appeal." Additionally, Galloway ignores Supreme Court Rule 22(m), which states that "[i]ssues that were . . . not raised or objected to before the Superior Court . . . are deemed waived for purposes of appeal, except that the Supreme Court, at its option, may notice an error not presented that affects substantial rights." Rules 4(h) and 22(m), when read in tandem, simply adopt the plain error standard of review. *See People v. Murrell*, 56 V.I. 796, 802 (V.I. 2012) (citing Rule 4(h) as authority for the plain error standard). Accordingly, we reject Galloway's argument that Rule 4(h) requires this Court to review all legal issues *de novo* even if they were not raised during the course of the Superior Court proceedings.

instructions to the jury, possesses the discretion to omit surplusage from the complaint filed by the People:

> In this case, the Superior Court's supplemental instruction did not charge an additional or different offense, or prejudice Brito's substantial rights, but merely omitted surplusage from the Information. The Information charged Brito with being an accessory after the fact, alleging that "knowing that a crime or offense has been committed, namely an Escape Prisoner, [he] did unlawfully receive, relieve, comfort or assist [Torres], an escapee, in order to hinder or prevent his apprehension, to wit: by driving [Torres] to Altona Lagoon beach in order to leave the island by boat. . . ." The forgoing language properly alleged the required elements of being an accessory after the fact and notified Brito that he was being charged as an accessory for assisting Torres, who had just escaped from prison. *See* 14 V.I.C. § 12(a). The "to wit" clause at issue did not allege any fact that was a necessary element of the charged crime and did not alter which facts the People were required to prove to establish Brito's guilt. As such, the facts alleged in the "to wit" clause were mere surplusage, and the Superior Court did not err in omitting these alleged facts from its charge to the jury. *See United States v. Milestone*, 626 F.2d 264, 269 (3d Cir. 1980) ("We conclude, therefore, that deleting the reference to Agent Mastrogiovanni in Count III was not an amendment to the indictment and was, at the most, only the removal of surplusage on the motion of the defendant."); *see also United States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010) ("We treat the allegation of additional facts beyond those which comprise the elements of the crime as 'mere surplusage.' " (quoting *United States v. Robinson*, 974 F.2d 575, 578 (5th Cir. 1992))); *United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004) ("The district court did not err by refusing to instruct the jury to find an element that really isn't an element. The failure to include in the instructions surplusage from the information was not error because only the 'essential elements' of the charge need be proven at trial." (citation omitted)); *State v. Navarro*, 621 A.2d 408, 412 (Me. 1993) (permitting the deletion of surplusage that "does not alter any fact that must be proved to make the act charged a crime"); *Wright, supra*, at § 128 ("The court may strike surplusage without impermissibly amending an indictment, and . . . need not submit to the jury extraneous statements in the indictment not essential to the allegation of an of-

fense."). Under these circumstances, the Superior Court's supplemental jury instruction was not plain error.

*Brito v. People*, 54 V.I. 433, 440-41 (V.I. 2010).

██ ██ Neither failing to stop at a red light nor driving under the influence of alcohol is a required element of reckless driving. While these related offenses can establish the factual predicate for the offense, the People were only required to prove that Galloway operated a motor vehicle with "willful or wanton disregard for the safety of person or property," and the Superior Court correctly instructed the jury on the definition of that phrase. Moreover, even if the Superior Court possessed an obligation to instruct the jury on the elements of driving under the influence and failure to stop at a red light while outlining the reckless driving charge, the record indicates that the Superior Court did provide the elements of those offenses when instructing the jury on Counts One and Three of the second amended complaint, and it is not clear how failing to re-iterate those elements during the charge for Count Two affected Galloway's substantial rights. Finally, while Galloway alleges that the failure to reference driving under the influence and failure to stop at a red light when delivering the charge for Count Two could have resulted in the jury "hav[ing] convicted him for being on the highway at 1.00 p.m. [sic], which they may irrationally consider an unholy hour," (Appellant's Br. 21), Galloway ignores the maxim that appellate courts " 'must assume that juries for the most part understand and faithfully follow instructions.' " *Gov't of the V.I. v. Rosa*, 399 F.3d 283, 297 (3d Cir. 2005) (quoting *Connecticut v. Johnson*, 460 U.S. 73, 85 n.14, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983)); *see also Augustine v. People*, 55 V.I. 678, 685 (V.I. 2011) (holding that an appellate court "must presume that jurors followed the instructions that they were given."). Since the Superior Court correctly instructed the jury on the elements of reckless driving, this Court is required to assume that the jury heeded those instructions. Accordingly, we affirm Galloway's reckless driving conviction.[9]

---

[9] In his appellate brief, Galloway also argues that he should receive a new trial due to the cumulative error doctrine. However, since the Superior Court committed no errors with respect to the failure to stop at a red light and reckless driving charges, and Galloway failed to challenge his driving under the influence conviction on appeal, the cumulative error doctrine is wholly inapplicable to this case. *Nicholas*, 56 V.I. at 750 n.24.

## D. Galloway's Sentence

Finally, Galloway urges this Court to overturn the sentences which correspond to his convictions and remand this matter for re-sentencing. For the reasons that follow, we grant the request, but only with respect to his reckless driving and failure to stop at a red light convictions.

### 1. *14 V.I.C. § 104*

 In his brief, Galloway argues that the Superior Court failed to comply with title 14, section 104 of the Virgin Islands Code when it separately sentenced him for all three offenses. Section 104, which provides greater protections than the Double Jeopardy Clause of the United States Constitution, provides that

> An act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such provisions, but in no case may it be punished under more than one. *An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.*

14 V.I.C. § 104. Thus, "[t]he plain language of section 104 indicates that despite the fact that an individual can be charged and found guilty of violating multiple provisions of the Virgin Islands Code arising from a single act or omission, that individual can ultimately only be punished for one offense." *See Williams v. People*, 56 V.I. 821, 832 (V.I. 2012). While Galloway — like virtually every other issue raised on appeal — failed to object to his sentence, this Court has already held that a failure to abide by section 104 satisfies all four prongs of the plain error standard of review. *Id.* (collecting cases).

 We agree with Galloway that, in this case, his convictions for reckless driving and failure to stop at a red light clearly arose from "an indivisible course of conduct." *Id.* at 832-34. However, the same is not true for his driving under the influence conviction, since Galloway's decision to drive his vehicle while under the influence occurred at an earlier time and place than his subsequent failure to stop at the red light, and thus his convictions for both offenses were not part of an indivisible state of mind or coincident error of judgment. *See, e.g., State v. Tang*, No. C3-95-1356, 1995 Minn. App. LEXIS 1551, at *3-4 (Minn. Ct. App. 1995) (unpublished) (rejecting argument that Minnesota's equivalent to

section 104 precludes prosecution for both driving while intoxicated and reckless driving); *State v. Salveson*, 2006 ND 169, 719 N.W.2d 747, 749 (N.D. 2006) (concluding that driving under the influence and aggravated reckless driving "do not relate to each other" for they involve separate acts and different criminal objectives). Therefore, we do not disturb Galloway's sentence for driving under the influence, but vacate his separate sentences for reckless driving and failure to stop at a red light and remand the matter so that the Superior Court may "sentence the defendant for one [of those] offense[s] and stay the imposition of any punishment for . . . the remaining offense[]," with directions that "upon successful completion of the sentence imposed, the convictions which were stayed shall be dismissed." *Williams*, 56 V.I. at 834 n.9.

### 2. *Other Sentencing Errors*

■ In his appellate brief, Galloway solely challenges the Superior Court's sentence on section 104 grounds. However, "this Court has consistently considered issues not raised on appeal when the issue involves a plain error that affects a defendant's substantial rights," and — as explained above — an illegal sentence will *per se* satisfy the four prongs of the plain error standard of review. *Id.*; *see Beaupierre v. People*, 55 V.I. 623, 630 (V.I. 2011) (collecting cases). Since we remand this matter to the Superior Court to enter a new judgment consistent with section 104, we also take this opportunity to highlight two other sentencing irregularities that the Superior Court should address on remand.

### a. *Incarcerative Sentence and Probation for Reckless Driving and Failure to Stop at a Red Light*

As noted earlier, we are unable to determine what sentence the Superior Court imposed on Galloway as a punishment for his convictions for the reckless driving and failure to stop at a red light. At the November 30, 2011 sentencing hearing, the Superior Court made the following remarks with respect to the reckless driving and failure to stop at a red light counts:

> As to Count 2, operating a motor vehicle in a reckless manner, the Court will have you serve that concurrently as to Count 1. That you pay a fine of one hundred dollars. The remaining conditions would be concurrent to Count 1.

As to Count 3, failure to stop at a red light. You pay a fine of twenty-five dollars. And that will also be concurrent with Count 1. So you will have a total of three hundred dollars.

(J.A. 238.) With respect to reckless driving, it is not clear whether the "remaining conditions" mentioned by the judge referred to probation, the requirement that Galloway enroll in a substance abuse program, or something else. Moreover, while the "that will also be concurrent with Count 1" statement with respect to the failure to stop at a red light count would appear to apply to the $25.00 fine, the judge clarified shortly thereafter that the fines were being imposed cumulatively. Thus, it is not clear precisely what part of the sentence for Count 3 would run concurrent with the sentence for Count 1. Additionally, the December 6, 2011 Judgment and Sentence did not identify a specific period of incarceration or probation for the reckless driving and failure to stop at a red light convictions, but simply stated that the reckless driving sentence "shall run concurrent with Count One" and that the failure to stop at a red light sentence "shall run concurrent with Counts One and Two." (J.A. 8.) Therefore, in addition to choosing whether to impose a sentence for either reckless driving or failure to stop at a red light, the Superior Court must state, with specificity, exactly what sentence is being imposed for the offense it selects.[10]

### b. Failure to Stop at Red Light Fine

At the November 30, 2011 sentencing hearing, the Superior Court stated that it would fine Galloway $25.00 for the failure to stop at a red light charge. (J.A. 238.) However, the written December 6, 2011 Judgment and Sentence requires him to "pay a fine in the amount of thirty five ($35.00) dollars." (J.A. 8.) It is well established that, when a written sentence conflicts with an oral sentence, the offending provision should be

---

[10] We note that, if the Superior Court intended to sentence Galloway on the reckless driving or failure to stop at a red light charges to a suspended one year sentence replaced with one year of probation, the sentence would be illegal because it exceeds the maximum period of incarceration authorized by law. *See* 20 V.I.C. § 544(a) ("Whoever violates any provision of section 492 of this title, concerning reckless driving, shall be fined not more than $1,000 *or imprisoned not more than six (6) months*, or both.") (emphasis added); 20 V.I.C. § 544(f) ("Unless another penalty is specifically provided, whoever violates . . . any law or regulation relating to the operation and use of motor vehicles, shall be fined not more than $200 *or imprisoned not more than six months*, or both.") (emphasis added).

vacated with instructions for the trial court to conform the written judgment to the oral sentence, unless the oral sentence is itself illegal. *See, e.g., Cheatham v. People*, S.Ct. Crim. No. 2008-0026, 2009 V.I. Supreme LEXIS 22, at *7 (V.I. Mar. 27, 2009) (unpublished); *United States v. Bonilla*, 579 F.3d 1233, 1245 (11th Cir. 2009); *United States v. Bigelow*, 462 F.3d 378, 380-81 (5th Cir. 2006). Since title 20, section 544(f) authorizes a fine of "not more than $200" without specifying a minimum fine, the Superior Court clearly possessed the discretion to order a $25.00 fine as punishment for the offense. Therefore, if the Superior Court chooses on remand to impose a sentence for the failure to stop at a red light charge, it should conform the written judgment to its oral sentence by reducing the fine to $25.00.

## III. CONCLUSION

Since the People introduced sufficient evidence to sustain Galloway's convictions for failure to stop at a red light and reckless driving, and Galloway has identified no other error that would warrant setting aside his convictions, we affirm the portion of the December 6, 2011 Judgment and Sentence which adjudicated him guilty of all three offenses. However, since Galloway's convictions for failure to stop at a red light and reckless driving arose from an indivisible course of conduct, we vacate the corresponding sentences for those offenses and remand the matter to the Superior Court so that it may impose a sentence which complies with title 14, section 104 of the Virgin Islands Code. Additionally, depending on which offense it chooses to impose a punishment, we direct the Superior Court to correct the other ambiguities and errors that relate to the sentences for reckless driving and failure to stop at a red light. Accordingly, we affirm Galloway's convictions, but vacate his sentence for reckless driving and failure to stop at a red light and remand this matter for re-sentencing.